**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DALE A. WATERS, individually and derivatively on behalf of COMMON STREET ASSOCIATES LIMITED PARTNERSHIP, a Massachusetts limited partnership,<br><br>        Plaintiffs,<br><br>v.<br><br>PAUL J. DONAHUE, an individual, PAUL DONAHUE JR., an individual, MARK DONAHUE, an individual, TRIDON CORP., a Massachusetts corporation, WESTON ASSOCIATES INC., a Massachusetts corporation, WESTON ASSOCIATES MANAGEMENT COMPANY INC., a Massachusetts corporation, WESTON ASSOCIATES DEVELOPMENT COMPANY, INC., a Massachusetts corporation, MEDON, LLC, a Delaware limited liability company, ST COMMON, LLC, a Massachusetts corporation,<br><br>        Defendants.<br><br>Nominal Defendant: COMMON STREET ASSOCIATES LIMITED PARTNERSHIP, a Massachusetts limited partnership | Case No. _____<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff DALE A. WATERS ("WATERS" and "Plaintiff") individually and derivatively on behalf of COMMON STREET ASSOCIATES LIMITED PARTNERSHIP, for his complaint against the Defendants, alleges the following:

### INTRODUCTION

1.      This is a direct and derivative action for declaratory, compensatory, and equitable relief against the Defendant General Partners, defined below, of an affordable housing real estate limited partnership, and against certain affiliates of the General Partners.

2.      This action arises from the self-dealing and misconduct of the General Partners and their affiliates, in violation of the rights of the partnership and of the Plaintiff, who is an investor in the partnership and a limited partner of the partnership.

3.      Defendant General Partners fraudulently induced a majority of the disinterested limited partners, consisting primarily of elderly persons, widows, and persons who inherited their limited partnership interests, each of which were unsophisticated in the field of real estate investment, to sell their valuable limited partnership interests for less than one third of the value of their investment to General Partners or their affiliates. Such an attempt was also made upon WATERS, to no avail.

4.      This scheme was accomplished through threats, intimidation, and misrepresentations with a goal of coercing the limited partners to sell their interests in breach of the General Partners' fiduciary duty. The buyout of the limited partners, occurring over an estimated period within the past three years, was premised on a valuation of the subject real property at approximately $5.38 million, a sum which the General Partners misrepresented to the limited partners as a fair valuation. At the time of each purchase, the partnership equity was worth more than three times the amount offered or sold to limited partners.

5.      WATERS has not been bought out by Defendants despite their attempts to do so, and brings this action: (1) to obtain declaratory relief on his partnership interest including his rights and remedies thereto, (2) to obtain properly allocated current and past distributions including any distributions wrongfully withheld, along with restoration of WATER's capital account and profits interests, (3) to compel Defendants to produce or allow inspection of the Partnership books and records under the Partnership Agreement and Massachusetts law, (4) an accounting, (5) for violations of Mass. Gen. Laws ch. 93A, (6) for common law breach of contract; (7) for breach of the implied covenant of good faith and fair dealing, (8) for tortious

interference with contractual relations, (9) for unjust enrichment, (10) for conversion, (11) for aiding and abetting conversion, (12) for breach of fiduciary duty; and (13) for aiding and abetting breach of fiduciary duty.

## I.   PARTIES

### A.   Plaintiff

6.   Plaintiff DALE A. WATERS is a citizen of the State of New Mexico. WATERS is and remains a limited partnership investor in Nominal Defendant COMMON STREET ASSOCIATES LIMITED PARTNERSHIP, described below.

### B.   Defendants

7.   Defendant PAUL J. DONAHUE ("DONAHUE SR.") is a citizen of the State of Massachusetts, doing business from offices at 170 Newbury Street, Boston, MA 02116. Since the Partnership's inception, DONAHUE SR. has been a general partner in the Partnership.

8.   Defendant TRIDON CORP. ("TRIDON") is a Massachusetts domestic profit corporation, Business Entity ID Number: 043253941, organized December 7, 1994 by DONAHUE SR., doing business from offices at 170 Newbury Street, Boston, MA 02116. Since at the least 2008, TRIDON has claimed to be a general partner in the Partnership.

9.   Defendant PAUL DONAHUE JR. ("DONAHUE JR.") is a citizen of the State of Massachusetts, doing business from offices at 16 Beaver Street, Weston, MA 02943. DONAHUE JR. is a director and the President of TRIDON.

10.   Defendant MARK DONAHUE ("M. DONAHUE") is a citizen of the State of Massachusetts, doing business from offices at 170 Newbury Street, Boston, MA 02116. M. DONAHUE is a director, the Treasurer, and the Secretary of TRIDON.

11.   Defendant WESTON ASSOCIATES, INC. ("WESTON") is a Massachusetts domestic profit corporation, Business Entity ID Number: 042478363, organized June 12, 1969

by DONAHUE SR., doing business from offices at 170 Newbury Street, Boston, MA 02116.

The officers and directors of WESTON are DONAHUE SR. and M. DONAHUE.

12.     Defendant WESTON ASSOCIATES MANAGEMENT CO., INC.

("MANAGEMENT") is a Massachusetts domestic profit corporation, Business Entity ID

Number: 042577565, organized January 1, 1976 by DONAHUE SR., doing business from

offices at 170 Newbury Street, Boston, MA 02116. The officers and directors of Management

are DONAHUE SR. and M. DONAHUE. MANAGEMENT claims to have been the manager of

the Partnership's property.

13.     WESTON ASSOCIATES DEVELOPMENT COMPANY, INC.

("DEVELOPMENT") is a Massachusetts domestic profit corporation, Business Entity ID

Number: 043331512, organized October 4, 1996 by DONAHUE JR., doing business from

offices at 170 Newbury Street, Boston, MA 02116. The officers and directors of Development

are DONAHUE JR. and M. DONAHUE. DEVELOPMENT claims to have been a development

affiliate of MANAGEMENT for the Partnership's property.

14.     Defendant MEDON, LLC ("MEDON") is a Delaware for-profit limited liability

company, qualified to do business in Massachusetts under Business Entity ID Number:

001403719, formed December 21, 2001, doing business from offices at 170 Newbury Street,

Boston, MA 02116. The officers and directors of Medon are DONAHUE JR. and M.

DONAHUE. MEDON claims to have become a general partner of the Partnership.

15.     Defendant ST COMMON, LLC ("STC") is a domestic for-profit limited liability

company formed February 7, 2013, qualified to do business in Massachusetts as Business Entity

ID Number: 461980954, doing business from offices at 170 Newbury Street, Boston, MA 02116.

The officers and directors of which are DONAHUE JR. and M. DONAHUE. By Certificate of

Amendment with the Massachusetts Secretary of State Filing Number: 201928514730, date

9/25/2019, STC claims to have become a general partner of the Partnership.

16.     The term "GP Defendants" herein, unless referred to otherwise, shall refer jointly and severally to DONAHUE SR., TRIDON, MEDON, STC and Does 1-10.

17.     The term "GP Affiliates" herein, unless referred to otherwise, shall refer jointly and severally to DONAHUE SR., DONAHUE JR., M. DONAHUE, WESTON, MANAGEMENT, DEVELOPMENT and Does 11-30.

## C.     Nominal Defendant

18.     Nominal Defendant COMMON STREET ASSOCIATES LIMITED PARTNERSHIP ("the Partnership") is a Massachusetts domestic limited partnership, organized August 28, 1980, Identification No.: L86002612.

## D.     Doe Defendants

19.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously-named Defendants is indebted to Plaintiff as alleged in this Complaint, and that Plaintiff's rights against the fictitiously named Defendants arise from this indebtedness.

## II.   JURISDICTION

20.     Diversity jurisdiction exists when "the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) requires complete diversity of citizenship between the parties opposed in interest. *Kuntz v. Lamar Corp*., 385 F.3d 1177, 1181 (9th Cir.2004). Individuals are citizens of their state of domicile. *Munoz v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir.1981).

5

21.     WATERS is a citizen of the State of New Mexico.

22.     GP Defendants and GP Affiliates whose interests are aligned, are not from, nor are they citizens of the State of New Mexico.

23.     There is complete diversity of citizenship between WATERS, on one hand, and GP Defendants and GP Affiliates, on the other hand, and the amount at issue is more than $75,000.

### III.   BACKGROUND FACTS

24.     The Partnership was formed as a Massachusetts limited partnership by the filing of a Certificate of Limited Partnership of Common Street Associates, dated July 21, 1980, filed with the Office of the Secretary of The Commonwealth of Massachusetts on August 28, 1980.

25.     The Original Certificate was subsequently amended and restated, and later amended and restated in its entirety by a Third Amendment dated December 1,1982, a Fourth Amendment dated May 25, 2005, and a Fifth Amendment dated September 19, 2019. A true and accurate copy of the Secretary of State filed Third, Fourth, and Fifth Amendments are attached hereto collectively as Exhibit A ("the Partnership Agreement").

26.     The Partnership's sole known asset with all related tangible and intangible assets including without limitation its reserves is the St. Alfio's Apartment Building, located at 35 Common Street in Lawrence, Massachusetts ("the Property"). The purpose of the Partnership was to develop and operate the Property's 155-unit rental apartments for the elderly and handicapped under Section 8 of the U.S. Housing Act of 1937, as amended by the Housing and Community Development Act of 1974.

27.     The terms of the Partnership Agreement provide, among other things, that profits and losses be shared 98% by the limited partners, 1% by the special limited partner, and 1% by the general partners. *See* Exhibit A, Section 10.1.A.

28.     The Partnership' ownership of St. Alfio's was in conjunction with HUD supplied or approved insured mortgages, including under HUD's "Mark-To- Market Program." Generally, HUD would subsidize rents on the property to provide affordable housing to residents of the community and also restructure debt under favorable terms with low interest rates. In turn, the profits or surplus cash from Property operations would be used for reserves or to pay down principal on any mortgages, and would, in some cases, be "restricted" from distributions to owners (here the Partnership). Upon payoff of mortgages, certain restrictions on distributions to owners would lapse. Plaintiff contends mortgages were paid and related HUD restrictions lapsed by no later than December 31, 2018, as set forth below.

29.     On April 26, 2019, a claimed existing limited partner and affiliate of the General Partner, Defendant STC, offered to purchase the limited partnership interest of WATERS for $216,900. This offer was purportedly approved by General Partners TRIDON and DONAHUE SR. Defendant STC later became a purported General Partner on September 25, 2019. A true and accurate copy of the offer from STC to WATERS is attached hereto as Exhibit B, and is incorporated herein by this reference.

30.     The $216,900 STC offer contained an "Analysis" signed by DONAHUE SR. and TRIDON as follows (underscore emphasis added):

> The property has a limit on distribution set by HUD and a long term affordable restriction.
> ...
> The Investor Limited Partners have already been allocated the bulk of the tax benefits, which will be generated by the Property. The Partnership is now allocating taxable income to the investor limited Partners with no or limited corresponding cash distributions. So it is expected that going forward that an Investor Limited Partner will be allocated taxab1e income such that the resulting tax liability will exceed the cash, if any distributed to them by the Partnership . Under these circumstances, payment of federal income taxes would be an out-of-pocket expense. The main factors taken into account when analyzing the offer are the following. Saint Alphios [sic] is close to 40 years old and is in need of significant capital improvements. HUD limits the annual cash flow distribution. The project has a long-term affordable restriction. The highest and best use for the project will probably be affordable housing at the end of the restriction. Taking all

of these factors into account the General Partner has approved this offer. (Exhibit B)

*Underline emphasis added.*

31.     Subsequent email conferrals on the offer between counsel for WATERS and M.

DONAHUE set forth the following:

a.     The price was calculated based on a purported appraisal with an effective

date of March 15, 2019 by Bonz & Company, Inc. ("the Appraisal") The Appraisal states

a value of $5,835,000 for the equity in the Property. A true and accurate copy of the

Appraisal is attached hereto as Exhibit C.

b.     According to M. DONAHUE in an email, the basis for the value of

$216,900 for WATERS' limited partnership interest was the following:

> "I believe the loan was $12,500,000.  This was sized based on available cash
> to pay the debt service.  From the $12.5 million loan $9,840,000 or $60,000
> per unit was used for capital improvements.  (This is well within industry
> standards) the remaining $2,660,000 was used in our calculations to be
> distributed to the partnership. The first $2,350,000 would be used to pay the
> return of capital.  The balance $310,000 would be split 50% to the GP, 50% to
> the limited partners ($6,200 per limited). $310,000 divided by 25=$6,200 In
> summary each 1 unit limited partner share would receive $94,000 return of
> capital, $6,200 distribution part 1, and $116,700 distribution part 2 (The
> investment value of $5,835,000 is split 50% to the General Partner and 50% to
> the limited partners.  $2,917,500 or 50% is divided up between 25 limited
> partners.  $2,917,500 divided by 25 =$116,700) ... For a total of $216,900.
> All of these factors were used to form the offer of $216,900 per 1 limited
> unit."

c.     A check was sent to WATERS and WATERS has neither accepted nor

deposited the check. He has refused through his counsel and manifested conduct that he

has not been bought out.

32.     For reasons set forth in this Complaint, Plaintiff contends the above statements by

M. DONAHUE, GP Defendants, and DONAHUE SR. were knowingly false when made and/or

the statements knowingly omitted material, relevant, and necessary information needed by

WATERS and other limited partners recipients thereof. These statements by GP Defendants and

M. DONAHUE were made with the intent that WATERS and other limited partner recipients rely on the representation as to value of his/her/its/their Partnership interest and acquiesce to the STC buyout offer made, in WATERS' case, for $216,900.

33.     WATERS also alleges upon information and belief that the GP Defendants took management fees to which they were not entitled and used Partnership funds to pay affiliates for unnecessary repairs, maintenance and betterments which GP Defendants caused to be expensed thereby overstating expenses, understating income and thereby understating WATERS' capital account  in an amount to be determined at the time of trial. This same practice reduced operating income for purposes of the appraisal and thereby understated operating income and as a result the equity value of the Partnership. WATERS' information and belief is based on the GP Defendants' pattern of misconduct as described herein, their principals' operation of numerous affiliated entities, and the excessive repair and maintenance costs charged to the Partnership.

34.     WATERS has not accepted any such offer nor deposited the check and he continues to be a limited partner of the Partnership with claims to his rightful capital account and an accounting thereof and profits as well as distributions. Plaintiff contends Defendants have wrongfully overstated expenses, failed to properly account for betterments thereby understating capital accounts as well as  withholding distributions to date and owe restoration of his capital account and profits interest, totaling well in excess of an estimated $300,000, subject to proof at the time of trial, to which he seeks Declaratory Relief and an Accounting.

35.     WATERS has not received his rightful Partnership capital account accounting and distributions to present, as set forth below, and seeks a judicial Accounting for that purpose.

**The Partnership Agreement, 98% Limited Partners Distributions, and Management Fee Restriction Through December 31, 2032 (14 Years)**

36.     The Partnership Agreement does not terminate or dissolve until December 31, 2032, some 14 years after the GP Defendants and GP Affiliates conspired to take control of all

limited partnership interests in late 2018 early 2019. *See* Exhibit A, Sections 2.3 (Term) and

Article XIII ("DISSOLUTION AND TERMINATION OF PARTNERSHIP 13.1 Events Which

Cause Dissolution. The Partnership shall continue in full force and effect until December 31,

2032...")

37.     The only way to dissolve the Partnership prior to December 31, 2032 required the

"Consent of Investor Limited Partners representing not less than 75% of the then outstanding

Units not owned by the General Partners..." (Exhibit A at Section 13.1A). It is undisputed that

the Partnership has not dissolved.

38.     Importantly, during that same 14-year time period the limited partners are entitled

to not less than 98% of Net Operating Income with 1% of that allotted to the general partners.

The 1% payable to the Special Limited Partner has lapsed because it was bought out years ago.

(Exhibit A at Section 10.1A).

39.     The GP Defendants are entitled to a management fee of not greater than 8% per

annum, an amount which they have exceeded many times over.  (Exhibit A, Article IX).

40.     Plaintiff alleges that these precise limitations were known to be extremely

favorable to the limited partners, including WATERS. Indeed, this was so much so that the GP

Defendants and the GP Affiliates conspired to defeat these provisions with the contrived early

sale pursuant to an appraisal wherein they adversely would claim a fair value that was at best one

third of the true value and entitlement to 50% of the capital gain.

41.     WATERS alleges that given the age of the Partnership, its term to December 31,

2032 and the fact all debt had been paid off, there was no good faith business judgment reason,

considering the best interests of the limited partners, to sell their limited partnership units.

Instead, the limited partners were entitled to share not less than 98% of the $1,100,000 of Net

Operating Income or $1,078,000 per year and WATERS was entitled to not less than 1/25th of

that amount or $43,120. Indeed, given the present value of that cash flow alone for 14 years at 5% interest is $426,829, WATERS still would own his interest to be bought out at that time at fair value.

**The March 15, 2019 Limited Use Restricted Appraisal**

42.     In a letter to Plaintiff's counsel dated April 29, 2019, M. DONAHUE stated that the March 15, 2019 Appraisal of the Property (Exhibit C) "was retained to determine the as is investment value of the asset as of March 15, 2019", and that the "value was used to determine the value of each limited partner share."

43.     The Appraisal itself is issued to WESTON and M. DONAHUE, not the Partnership or Plaintiff, and is a "Restricted Use Appraisal" under Rule 2-2(c) of the Uniform Standard Practice. The only "intended user" of the appraisal is WESTON, and it is for "internal decision making purposes." (Exhibit C at 1)

44.     The Appraisal notes that appraisers only made an exterior inspection of the St. Alfio's Property. The appraisers did not tour the Property nor go inside the Property, which would bear upon the purported need for extensive capital improvements allegedly required, which recall were $60,000 per unit or $9,840,000. (Ex. C at 1, 2, 5 and Paragraph 31.b above.)

45.     The Appraisal expressly disclaims the use of it as a basis for valuing any limited partners' limited partnership interests because doing so could be "misleading":

> Since the appraisal reflects the specific scope of work pursuant to the intended use and intended users based upon the agreement of the client and appraiser, the appraisal could be *misleading* if considered for any other purpose or in any other context. Therefore, this appraisal is not valid for any other users or use without approval in writing by the appraiser and the client.

(Exhibit C at 1, italics and underline emphasis added.)

46.     Despite the Appraisal's disclaimer of use for WATERS and the other limited partners, M. DONAHUE expressly stated to WATERS' counsel that it was used to calculate a

purported offer to WATERS who, like other similarly situated limited partner investors, had never expressed any interest in selling his interest.

47.     As an initial matter, the Appraisal documents "Total Gross Income $2,122,172 Less Total Vacancy and Collection 2.5% ($53,054) Effective Gross Income $2,069,118". The Net Operating Income ("NOI") resulting, which incorporates excessive expenses, is $1,013,103.

48.     As stated above, Plaintiff alleges that the NOI of the Partnership is not less than $1,100,000.

49.     Because the term of the Partnership runs to December 31, 2032 and the early dissolution requires the vote of the limited partners not controlled by the GP Defendants or the GP Affiliates, any sale or other "Capital Transaction" is adverse to the limited partners who would be immediately diluted receiving only 50% of the sale proceeds. (Exhibit A at Section 10.2.B.8).

50.     Without any reasonable basis, the Appraisal assumes that the Partnership "will obtain" a "$12,000,000 loan" to fund "some capital work". (Exhibit C at 2.) The Appraisal's use of this loan implausibly reduces the purported value of the Property by incorporating this loan as a liability without any corresponding increase in the asset value- in other words it is materially dilutive. As discussed above, M. DONAHUE, in his correspondence with Plaintiff's counsel, assumed a $12.5 million loan, with $9,840,000 allegedly used for capital improvements at the Property and reduced the buyout offer correspondingly. The remainder of $2,660,000 was purportedly to be used to restore the understated capital accounts, also discussed above.

51.     Plaintiff alleges upon information and belief that GP Defendants understating of the capital accounts as alleged, in WATERS' case by an estimated $300,000 for his 4% as of December 31, 2018 and means that the purported accounting shorted the limited partners a combined not less than $7,500,000 of capital accounts alone.

52.     No loan for $12 million nor $12.5 million was ever obtained. No substantiation for $9,840,000 of 2019 capital improvements was ever made to WATERS, despite a demand for such information.

53.     Based upon information and belief, no capital campaigns or improvement plans were ever performed or contemplated as of 2019, certainly not to this approximate $10 million degree which Plaintiff alleges would be wholly unnecessary because of the historical repair and improvements, although improvements were wrongly classified as expenses and not as capital in order to materially reduce capital accounts- 98% of which adversely affected, i.e. undervalued limited partner capital accounts.

54.     M. DONAHUE's email stated the purported $9,840,000 marked for capital improvements would equate to "$60,000 per (apartment) unit." Plaintiff is not aware of any 2019 capital campaign effort by Defendants to spend nearly $10 million on the Property or $60,000 per apartment unit, nor can Plaintiff conceive of any "need" to spend such sums on each apartment unit of the Property, especially after the long-standing historical practice of an aggressive repair, maintenance and improvement campaign, which was expensed year by year, thereby reducing WATERS' capital account and distributions. Additionally, the sum of $60,000 per unit - actually rounded down to $9,840,000 per unit for 155 units - equates to $63,483 per unit, not $60,000.

55.     Contrary to M. DONAHUE's representation that $60,000 of capital improvements per unit was "well within industry standards," this amount is vastly in excess of industry standards for capital improvement expenditures for similar properties.

56.     The Property offers the following unit mix per the Appraisal:

**Property Identification**

St. Alfio's Villa Apartments is a 155-unit affordable rental development for senior tenants. The subject building is contained on one parcel at 35 Common Street in Lawrence. The parcel contains a single multi-leveled brick building. The unit mix consists entirely of one and two-bedroom units.

**Unit Mix – St. Alfio's Villa Apartments**

| Unit Type | | Number of Units | Avg. Unit Area (SF) | Total Area (SF) |
|---|---|---|---|---|
| Bedroom | Baths | | | |
| One-Bedroom | 1 | 128 | 579 | 74,112 |
| Two-Bedroom | 1 | 27 | 1,028 | 27,756 |
| Total | | 155 | | 101,868 |

The property provides limited off-street surface parking and adequate landscaping. It contains an on-site management office, two community spaces, and laundry facilities on each floor. The propert contains 110,641 gross square feet of building on a single lot of 85,813 square feet.

57.     Plaintiff contends there are and were no such capital improvement needs of the Property and representations to the contrary by Defendants are false. The Property's repair, maintenance, and improvement needs were met and exceeded over time including overpayments to GP Affiliates for contracted amounts as well as wrongly expensing improvements as repairs to reduce capital accounts, withheld surplus cash used to establish excessive reserves, pay down principal on mortgages, and allocations to maintenance and improvements as required by HUD, up to December 31, 2018.

**The Alleged HUD Cash Flow Restrictions**

58.     In arriving at an equity value, the Appraisal also assumed HUD restrictions on cash flow post January 1, 2019 capped at $63,728 per year continued, and that the owner (i.e., the Partnership) receives nearly $12 million dollars from a loan (Exhibit C at 3):

> "The subject's as-is Investment Value assumes that the owner receives an annual payment of $63,728 for years one to 11 and the net proceeds of $11,896,963. Our analysis indicates a discount rate of 7.50% is reasonable. The application of the 7.50% rates to the stream of payments indicates a rounded value of $5,835,000."

59.     M. DONAHUE stated the following in an email to Plaintiff's counsel on June 24,

2019:

> "As per the audit yes the restrictions associated with the financing are no longer in effect
> now that financing has been retired but the original HUD restrictions are still in effect.
> Any surplus cash above $63,728 is restricted, cash flow is restricted to $63,752 per year.
> As per cash flow yes cash flow is split 98% to the Investor Limited Partner, 1% to the
> Special Limited Partner, and 1% to the General Partner."

60.     Despite Plaintiff's requests, Defendants have failed to sufficiently substantiate M.

DONAHUE's and the Appraisal's reference to a $63,728 cash flow restriction. (Exhibit C at 2.)

No reason or basis is given for the assumption in the Appraisal and no agreement or contract

supporting the assumption is referenced in the Appraisal.

61.     M. DONAHUE's email above was in reference to - and in conflict with - a

December 31, 2018 Audit of the Partnership by Burke & Company, which directly states at Note

6, page 11 that restrictions on distributions lapsed upon payoff of HUD insured mortgages,

which were all paid in full as of December 31, 2018, as excerpted below. A true and accurate

copy of
the 2018
Partnershi
p Audit is
attached
hereto as
Exhibit

**NOTE 5 - MORTGAGE NOTE PAYABLE**

On December 29, 2004, the Partnership refinanced its HUD insured mortgage under the "Mark to Market" program of the Department of Housing and Urban Development. The old mortgage of $6,661,723 was paid off and three new mortgages were given. As of December 31, 2018, these mortgages were paid in full.

**NOTE 6 - MORTGAGE PAYABLE TO THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

The Partnership was required to disburse its H.U.D. approved surplus cash under the terms of the amended regulatory agreement.

These mortgages were paid in full and the restrictions on distributions lapsed.

D:

62.     In support of the 2018 Audit, stating no further restrictions after the loans are retired, the 2017 Partnership Audit references at page 11, Note 7 such restrictions, including $508,546 for the repayment of the 2nd and 3rd Mortgages to HUD. A true and accurate copy of the Partnership 2017 Audit is attached hereto as Exhibit E:

---

**NOTE 7 - MORTGAGE PAYABLE TO THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

Under the terms of the mortgages and regulatory agreements, the Partnership is required to disburse its H.U.D. approved surplus cash as follows:

| | |
|---|---:|
| Incentive Management Fee (2.19% of Gross Revenue) | $ 46,433 |
| Partners Distribution (25% of the Balance) | 169,515 |
| Repayment of 2nd and 3rd Mortgages to H.U.D. (75% of the Balance) | 508,546 |
| Surplus Cash – December 31, 2017 | $724,494 |

Under the terms of the Restructuring Agreement with H.U.D., these surplus cash loan repayments are due ten days after filing the partnership's annual financial statements (April 10, 2018).

---

63.     To date, despite the demand for such information, Plaintiff has not received a sufficient explanation for the claimed $63,728 HUD restriction assumed in the 2019 Appraisal for the forward 11 years, let alone for the 14 years remaining. Plaintiff demanded the HUD Amended Regulatory Agreement referenced by the 2017 and 2018 Audits but has not received any. Plaintiff so also demanded an explanation as to how surplus cash previously allocated to repayment of mortgages is now being allocated after the mortgage obligations were extinguished as of December 31, 2018, but has not received any such explanation. In other words, there has been no explanation as to where the surplus cash would go even assuming such a restriction existed, because clearly it is no longer going to the repayment of HUD mortgages.

64.     In all of 2019, Plaintiff received $0 distributions from the Partnership. As admitted by M. DONAHUE, 98% of distributions are allocated to limited partners. WATERS

owns a minimum of nearly 4% or a 1/25th share of the 98% distributions. Per the 2017 Audit, $508,546 was paid towards mortgages, which now no longer exist as of the end of 2018. 98% of this figure is $498,375 which would be freed to distribute. Plaintiff's 1/25 share equals $19,935, on this one freed restriction alone, without assuming other surplus cash and assuming 2018 income was stable or near that of 2017.

65.    The April 26, 2019 buyout offer from STC and GP Defendants stated that income would be allocated to limited partners but with "no or limited corresponding cash distributions" so that tax liability on that allocated income will "exceed the cash distributed". (Exhibit B at 2) Plaintiff has demanded from Defendants but has not received any explanation as to where income allocated to WATERS for tax purposes but not distributed to WATERS would be accounted for other than as a credit to his capital account.

66.    Plaintiff alleges the Appraisal is so materially flawed it has no merit whatsoever. Exhibit 3-Long Term Cash Flow assumes the $12,500,000 loan even though one was not obtained and further assumes that the $10,000,000 for improvements would not be accretive and increase the value of the Property even $1. Further the same schedule states Net Operating Income for years 1 through 11 starting at $1,013,103 and ending at $1,396,857 with fixed loan payments of $782,471. However, the Appraisal glaringly fails to account for the cash remaining after the debt service which ranges between $230,632 in year one, increasing each year to $614,386 an average of $422,509 per year or an additional omitted $4,647,599 without interest- 98% of which or $4,554,647 would be allocated to the limited partners' capital accounts and paid first at time of distributions upon dissolution or sale.

**The October 25, 2019 $10 Million Loan**

67.    After WATERS received Defendants buyout offer on April 26, 2019, and after the communications above about the value of WATERS' interest, and after WATERS rejected the

17

tender, it was learned by Plaintiff on or around May 7th, 2020 from a records search that Defendants caused the Partnership to enter into a loan and mortgage on the St. Alfio's property on October 25, 2019, for $10 million dollars.

68.     A true and accurate copy of the October 25, 2019 mortgage is attached hereto as Exhibit F. The mortgage does not reference any cash flow restrictions. The mortgage does not reference any conditions or covenants on capital improvements. The mortgage is not with HUD nor and affiliate with HUD but rather with a private bank, South Shore Bank. From October 25, 2019 to May 7th, 2020, Defendants never informed WATERS of the loan and it was only uncovered by WATERS own search of real property records.

69.     Plaintiff recently demanded an accounting of the $10 million dollar loan and disposition of its proceeds. No response has been provided by Defendants.

### The May 8, 2020 Derivative Demand Letter

70.     On May 8, 2020, Plaintiff WATERS through counsel sent a derivative demand letter to counsel for Defendants. The demand was sent to satisfy the requirements of Mass. Gen. Laws ch. 109, § 56, demanding the General Partners commence an action on behalf of the Partnership. The demand letter in substance and effect expressed the allegations as set forth in this Complaint. A true and accurate copy of the letter is attached hereto as Exhibit G and is incorporated herein by this reference.

71.     Although counsel for Defendants responded to the demand letter, counsel was unable to resolve the dispute. As a result, Plaintiff had no alternative but to bring this Complaint.

72.     As a part of the derivative demand letter, Plaintiff demanded certain documents from Defendants. None of the critical documents demanded by Plaintiff or responsive to Plaintiff's requests were produced to date, including but not limited to the following requested documents:

a. The HUD Amended Regulatory Agreement and any Amendments thereto from 2011 to present.

b. Partnership Tax Returns for fiscal years 2012 - 2019.

c. General Ledgers, Profit and Loss Statements, Balance Sheets, and schedules of Assets and Debts for the Partnership from 2012 - 2019.

d. All loans or loan applications regarding the Partnership and the property located at 35 Common Street in Lawrence, Massachusetts from January 1, 2017 to present.

e. All engineering reports, site plans, estimates, inspections, invoices and any other information regarding capital improvement needs for the property located at 35 Common Street in Lawrence, Massachusetts.

f. Distribution histories for Limited Partners from January 1, 2012 to present.

g. Distribution histories for the $10 million in loan proceeds including bank statements from October 1, 2019 to present, to include disposition of the loan proceeds to any Person or partner.

h. Documents setting forth the limited partners of the Partnership. If original Limited Partners were acquired by any affiliate of General Partners, the date of acquisition, terms and agreements governing the acquisition or transaction documents, and all solicitation letters from January 1, 2012 to present.

i. The October 2019 mortgage promissory note and the 2011 mortgage promissory note.

j. The historical use and disposition of improvements to the Property since January 1, 2015.

k. If any actual capital improvements were made since October 1, 2019, the contract for such improvements, disclosures as to the affiliate status of any contractor or subcontractor engaged for the same, amounts actually paid, job inspection cards for such improvements and proof of fact that improvements were actually done and the scope thereof.

73.     The Partnership Agreement at section 8.2 states that all Partnership books of account are available to be inspected by a limited partner or audited by any limited partner. (Exhibit A at 36, § 8.2.)

74.     Pursuant to the Partnership Agreement and Mass. Gen. Laws ch. 109, §§ 5, 21, Plaintiff demands that Defendants produce or make available for inspection the documents set forth above. Plaintiff further alleges that Defendants violated Mass. Gen. Laws ch. 109, §§ 5, 21 by failing to properly respond to Plaintiff's demand.

## IV.   COUNTS FOR RELIEF

## COUNT I

### Declaratory Relief - Plaintiff's Status as Limited Partner
### Against all Defendants

75.   Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

76.   An actual controversy exists between Plaintiff and the Defendants as to whether Plaintiff remains a limited partner of the Partnership.

77.   Section 11.7 of the Partnership Agreement provides that, under certain circumstances, if a majority of the Partnership's limited partners accept an offer to sell their Partnership interests, then all limited partners shall be deemed to have accepted the offer.

78.   Plaintiff is informed and believes that Defendants take the positions that: (I) the April 26, 2019 buyout offer from Defendant STC to Plaintiff was made pursuant to Section 11.7; (ii) a majority of limited partners accepted the offer; and (iii) therefore, Plaintiff is deemed to have accepted the offer pursuant to Section 11.7.

79.   Plaintiff denies that he is deemed to have accepted STC's offer pursuant to Section 11.7, because, inter alia, Section 11.7 only applies to an offer made by an independent third party and does not apply to a coercive offer, let alone made upon misrepresentations and material omissions,  made by the GP Defendants or their affiliates. Further Plaintiff denies he can be deemed to have accepted STC's offer pursuant to section 11.7 because the offer was not made to other limited partners nor have other limited partners accepted any offer on the same terms offered to Plaintiff.

80.   Therefore, an actual controversy exists between Plaintiff and Defendants as to whether Plaintiff or Defendant STC owns Plaintiff's interest in the Partnership.

81.   In order to resolve this controversy, Plaintiff requests that the Court declare

pursuant to 28 U.S.C. § 2201 that he remains a limited partner of the Partnership, and that

Defendants' attempt to force Plaintiff to sell his interest in the Partnership was null and void.

## COUNT II

### Declaratory Relief - The Removal and Replacement of General Partners
### Against GP Defendants

82.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth

herein.

83.     An actual controversy exists between Plaintiff and the Defendants as to whether

Plaintiff has the right to remove and replace the General Partners under the Partnership

Agreement.

84.     Section 3.8 of the Partnership Agreement allows for the removal of any General

Partner, by majority vote of investor limited partners, for the willful violation of fiduciary

responsibilities or a finding by a court of a willful breach of any material provision of the

Partnership Agreement. Mass. Gen. Laws ch. 109, § 23 allows for the removal of General

Partner(s) in accordance with partnership agreements.

85.     Plaintiff is informed and believes that Defendants take the position that limited

partners who are affiliates of the General Partner are entitled to vote on the removal of a General

Partner under Section 3.8.

86.     Plaintiff contends limited partners who are affiliates of the General Partner are not

entitled to vote as conflicted persons or persons or entities who are not independent evaluators of

General Partners and their performance or duties to limited partners, including under the

Partnership Agreement.

87.     Plaintiff is of the information and belief that he is the sole, independent limited

partner and as such has authority to remove General Partners.

88.     The conduct of GP Defendants STC, M. DONAHUE, TRIDON, and DONAHUE

SR. as above described, including but not limited to the false representations as to Plaintiff's partnership interest value, his capital account, the right to distributions, the false Appraisal, and the $10 million loan, constituted material breaches of fiduciary duty that warrants removal of these General Partner Defendants to be replaced by competent General Partners in accordance with the Partnership Agreement.

89.     Therefore, an actual controversy exists between Plaintiff and Defendants as to whether Plaintiff has the right to remove and replace the General Partners under the Partnership Agreement.

90.     In order to resolve this controversy, Plaintiff requests that the Court declare pursuant to 28 U.S.C. § 2201 that he has the right to remove and replace the General Partners under the Partnership Agreement, and that limited partners who are affiliates of the General Partner are not entitled to vote on the removal of a General Partner under Section 3.8.

## COUNT III

### For Limited Partner Distributions and Restoration of Capital Account
### Against All Defendants

91.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

92.     The Partnership Agreement requires distributions to be 98% to limited partners. (Exhibit A at 39, § 10.2(4).) As set forth above distributions were withheld from Plaintiff including distributions from all freed restrictions on the property, which occurred no later than December 31, 2018. All surplus cash previously allocated to HUD mortgages that are no longer in effect should be distributed to limited partners 98% pursuant to the Partnership Agreement.

93.     Plaintiff further brings this action for past distributions wrongfully withheld, to be determined by an Accounting.

94.     Plaintiff further seeks relief for the restoration of his limited partnership capital

account of no less than $94,000 as admitted by Defendants but reserving all rights as to proper allocations thereto and the capital account balance thereof. The alleged proceeds of the $10 million loan by Defendants remain unaccounted for, and Plaintiff has not received nor been allocated $94,000 to his capital account.

95.     Pursuant to Mass. Gen. Laws ch. 109, § 36, at the time WATERS became entitled to receive a distribution he has the status of, and is entitled to all remedies available to, a creditor of the Partnership with respect to the distribution.

96.     Plaintiff is a limited partner of the Partnership and has fully performed his duties under the Partnership Agreement.

97.     Defendants have harmed Plaintiff by improperly withholding funds to which he is entitled under the Partnership Agreement and Massachusetts law.

## COUNT IV

### The Production of Partnership Books and Records
### Against GP Defendants

98.     Plaintiff realleges and incorporate the foregoing allegations as if fully set forth herein.

99.     Plaintiff brings this cause of action under the Partnership Agreement at section 8.2 and under Mass. Gen. Laws ch. 109, §§ 5, 21.

100.    Plaintiff has demanded Partnership books and records as set forth in paragraph 72 above. To date, no Defendant has supplied Plaintiff with any of the requested documents and information.

101.    Plaintiff is a limited partner of the Partnership and has fully performed his duties under the Partnership Agreement.

102.    The GP Defendants have harmed Plaintiff by improperly withholding records to which he is entitled under the Partnership Agreement and Massachusetts law.

23

## COUNT V

### An Accounting Against GP Defendants

103.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff does not know the exact amount owing to him as a result Defendants' material misrepresentations, material omissions, and other misconduct as above described. An accounting is therefore necessary to determine this amount.

105.    Pursuant to Mass. Gen. Laws ch. 108A, §§ 21 and 22, partners in a partnership are entitled to an accounting. Pursuant to Mass. Gen. Laws ch. 109, §§ 24 and 62, the foregoing provisions apply in the context of a limited partnership and bind its general partners.

106.    Plaintiff is a limited partner of the Partnership and has fully performed his duties under the Partnership Agreement.

107.    The GP Defendants have harmed Plaintiff by improperly denying Plaintiff the accounting to which he is entitled under Massachusetts law.

## COUNT VI

### Violations of Mass. Gen. Law ch. 93A Against GP Defendants

108.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

109.    The GP Defendants are engaged in a trade or business within the meaning of Mass. Gen. Laws ch. 93A.

110.    The GP Defendants' conduct described above constitutes unfair and deceptive acts and practices declared unlawful in Mass. Gen. Laws ch. 93A, § 2.

111.    The GP Defendants' violations of Chapter 93A were willful and knowing.

112.    As a result of GP Defendants' unfair and deceptive trade practices, Plaintiff is

entitled to an award of compensatory and consequential damages, treble damages, and attorneys' fees.

113.    The GP Defendants' unfair and deceptive acts and practices have caused harm to Plaintiff.

## COUNT VII

### Breach of Contract Against GP Defendants

114.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

115.    The Partnership Agreement is a valid contract to which Plaintiff and the GP Defendants are parties.

116.    As described above, the GP Defendants are in material breach of the Partnership Agreement, including without limitation, inter alia, sections 3.8, 8.2, 10.2, 11.7.

117.    Any ambiguity in the terms of the Partnership Agreement are to be strictly construed against the GP Defendants and in favor of Plaintiff.

118.    Plaintiff is a limited partner of the Partnership and has fully performed his duties under the Partnership Agreement.

119.    The GP Defendants' breaches of the Partnership Agreement have caused harm to Plaintiff.

## COUNT VIII

### Breach of the Covenant of Good Faith and Fair Dealing Against GP Defendants

120.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

121.    The covenant of good faith and fair dealing is implied in every contract.

122.    The Partnership Agreement is a valid contract to which Plaintiff and the GP

Defendants are parties.

123.     As described above, the GP Defendants have evaded the spirit of the Partnership Agreement and abused their power to favor their own interests over those of limited partners such as Plaintiff.

124.     Plaintiff is a limited partner of the Partnership and has fully performed his duties under the Partnership Agreement in good faith at all times.

125.     The GP Defendants' breaches of the covenant of good faith and fair dealing have caused harm to Plaintiff.

## COUNT IX

### Tortious Interference with Contractual Relations Against All Defendants Not Signatory to the Partnership Agreement

126.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

127.     The Partnership Agreement is a valid contract to which Plaintiff, the signatory GP Defendants, and other limited partners are or were parties.

128.     Plaintiff entered into the Partnership Agreement for his economic benefit.

129.     Defendants, who are not signatories to the Partnership Agreement, knowingly induced the GP Defendants to breach the Partnership Agreement.

130.     Defendants', who are not signatories to the Partnership Agreement, interference in Plaintiff's contractual relations was intentional and improper in both motive and means.

131.     Defendants', who are not signatories to the Partnership Agreement, interference with Plaintiff's contractual relations has caused harm to Plaintiff.

## COUNT X

### Unjust Enrichment Against All Defendants

132.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

133.     Plaintiff has conferred benefits on the Defendants through his participation in the Partnership, including the benefit of compensation derived by the Defendants with respect to Plaintiff's capital invested in the Partnership.

134.     The Defendants have at all times known of the benefits conferred on them by Plaintiff.

135.     Retention of these benefits by the Defendants under the circumstances described herein would be inequitable, due to the Defendants' bad faith, fiduciary breaches, and aiding and abetting of the same.

136.     The Defendants' unjust retention of benefits conferred on them by Plaintiff has caused harm to Plaintiff.

## COUNT XI

### Conversion Against GP Defendants

137.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

138.     Plaintiff owns and has the right to possess his limited partnership interest in the Partnership.

139.     The GP Defendants intentionally interfered with Plaintiff's right to possess his Partnership interest by, inter alia, purporting to force the sale of Plaintiff's Partnership interest in connection with the April 26, 2019 buyout offer from Defendant STC to Plaintiff.

140.     The GP Defendants further intentionally interfered with Plaintiff's right to possess

his Partnership interest by, inter alia, denying Plaintiff the rights of a partner to distributions, inspection of books and records, accounting, and the right to vote on the removal of general partners.

141.    The GP Defendants have wrongfully refused Plaintiff's demands for the return and use of his Partnership interest. Plaintiff has not consented to the GP Defendants' interference with his Partnership interest.

142.    Through their intentional interference, the GP Defendants deprived Plaintiff of the possession and use of his Partnership interest.

143.    The GP Defendants' intentional interference with Plaintiff's right to possess his Partnership interest has caused harm to Plaintiff.

## COUNT XII

### Aiding and Abetting Conversion Against All Defendants

144.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

145.    The GP Defendants unlawfully converted Plaintiff's Partnership interest to their own possession and use as described above.

146.    All remaining Defendants, through their participation in a common scheme with the GP Defendants as described herein, substantially assisted the GP Defendants' conversion of Plaintiff's Partnership interest.

147.    In so doing the Defendants acted with knowledge that the GP Defendants' actions were wrongful and in breach of their duties to Plaintiff.

148.    Defendants' aiding and abetting of the GP Defendants' conversion of Plaintiff's Partnership interest has caused harm to Plaintiff.

## COUNT XIII

**Breach of Fiduciary Duty Against GP Defendants
Derivatively on Behalf of the Partnership**

149.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

150.    In a limited partnership, the general partners owe the limited partners fiduciary duties of the utmost good faith and loyalty.

151.    The general partners' duty of loyalty prohibits self-dealing, competition with the partnership, and pursuit of the partnership's business opportunities.

152.    As a fiduciary, the general partners must consider the interests of the limited partners, and the general partners must not act solely for their own private gain.

153.    Pursuant to Mass. Gen. Laws ch. 108A, § 21 "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property." Pursuant to Mass. Gen. Laws ch. 109, §§ 24 and 62, the foregoing provision applies in the context of a limited partnership and binds its general partners.

154.    Through the acts and omissions described herein, the GP Defendants have breached their duty of loyalty to the Partnership.

155.    The GP Defendants exploited Partnership business opportunities for their own gain when they sought to acquire the limited partners' interests for prices substantially below fair value.

156.    Plaintiff brings this Count on behalf of the Partnership, pursuant to Mass. Gen. Laws ch. 109, § 56, to recover judgment against the GP Defendants in the Partnership's favor.

157.    Plaintiff attempted to secure the initiation of an action against the GP Defendants

on behalf of the Partnership, including by sending to the Defendants the May 8, 2020 demand letter attached hereto as Exhibit G.

158.    The GP Defendants have wrongfully refused to bring an action against themselves on behalf of the Partnership. The GP Defendants' failed to properly act on Plaintiff's demands due to their conflicts of interest in this matter.

159.    Any further efforts to cause the GP Defendants to bring an action against themselves on behalf of the Partnership is unlikely to succeed, because the GP Defendants' actions demonstrate an intent to serve their own self-interest, and not that of the Partnership.

160.    Plaintiff is presently a limited partner of the Partnership.

161.    Plaintiff was a limited partner of the Partnership at all times relevant to the matters discussed herein.

162.    The GP Defendants' breaches of fiduciary duty harmed the Partnership.

## COUNT XIV

### Aiding and Abetting Breach of Fiduciary Duty Against All Defendants Derivatively on Behalf of the Partnership

163.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set forth herein.

164.    As discussed above, the GP Defendants breached their fiduciary duties to the Partnership.

165.    The remaining Defendants knew of the GP Defendants' fiduciary breaches at all times.

166.    The remaining Defendants actively participated in or substantially assisted the fiduciary breaches, and in so doing did not act in good faith.

167.    Plaintiff brings this Count on behalf of the Partnership, pursuant to Mass. Gen. Laws ch. 109, § 56, to recover judgment against all Defendants in the Partnership's favor.

168.     Plaintiff attempted to secure the initiation of an action against the Defendants on behalf of the Partnership, including by sending to the Defendants the May 8, 2020 demand letter attached hereto as Exhibit G.

169.     The Defendants have wrongfully refused to bring an action against themselves on behalf of the Partnership. The Defendants' failed to properly act on Plaintiff's demands due to their conflicts of interest in this matter.

170.     Any further efforts to cause the Defendants to bring an action against themselves on behalf of the Partnership is unlikely to succeed, because the Defendants' actions demonstrate an intent to serve their own self-interest, and not that of the Partnership.

171.     Plaintiff is presently a limited partner of the Partnership.

172.     Plaintiff was a limited partner of the Partnership at all times relevant to the matters discussed herein.

173.     The Defendants' aiding and abetting of the GP Defendants' breaches of fiduciary duty harmed the Partnership.

## V.   JURY DEMAND

174.     Plaintiff demands a trial by jury on all counts so triable.

## VI.   PRAYER FOR RELIEF

175.     WHEREFORE, Plaintiff prays for relief against all Defendants as follows:

a.     Entering a judgment declaring that Plaintiff remains a limited partner of the Partnership, and that Defendants' attempt to force Plaintiff to sell his interest in the Partnership was null and void;

b.     Entering a judgment declaring that Plaintiff has the right to remove and replace the General Partners under the Partnership Agreement Section 3.8, and that limited partners who are affiliates of the General Partner are not entitled to vote on the

removal of a General Partner under Section 3.8;

      c.      Awarding Plaintiff compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount which may be proven at trial;

      d.      Awarding Plaintiff punitive damages against all Defendants;

      e.      Awarding Plaintiff attorney fees and costs;

      f.      Awarding Plaintiff pre-judgment and post-judgment interest, as well as his reasonable attorneys' fees, experts' fees, and other costs; and

      g.      Awarding such other and further relief as this Court may deem just and proper.

DATED: September 23, 2020.        CATANZARITE LAW CORPORATION

                              _____

                              Kenneth J. Catanzarite (SBN 113750)
                              Email: kcatanzarite@catanzarite.com
                              Tim J. O'Keefe (SBN 290175)
                              Email: tokeefe@catanzarite.com
                              CATANZARITE LAW CORPORATION
                              2331 West Lincoln Avenue
                              Anaheim, California 92801
                              Tel:(714) 520-5544
                              Fax: (714) 520-0680
                              *Admission pro hac vice in process*

                              /s/ Timothy Cornell
                              Timothy Cornell, BBO 654412
                              Cornell Dolan, P.C.
                              10 Post Office Square, Suite 800 South
                              Boston, MA 02109
                              tcornell@cornelldolan.com
                              (617) 535-7763

                              Garth A. Spencer (NY Reg. No. 4991857)
                              gspencer@glancylaw.com
                              GLANCY PRONGAY & MURRAY LLP
                              230 Park Ave., Suite 530
                              New York, NY 10169

Tel: 212-682-5340
Fax: 212-884-0988
*Admission pro hac vice in process*

Attorneys for Plaintiffs